Timothy J. Conway, WSBA 52204
  Direct Dial: 503.802.2027
  Facsimile: 503.274.8779
  E-Mail: tim.conway@tonkon.com
TONKON TORP LLP
888 SW Fifth Avenue, Suite 1600
Portland, OR 97204-2099

Attorneys for Karen L. Easterday, individually and as personal representative of the Estate of Gale A. Easterday

HONORABLE WHITMAN L. HOLT

Hearing Date: December 21, 2021
Hearing Time: 11:00 a.m.
Location: Telephonic
Telephone Number: 877-402-9757
Telephonic Access Code: 7036041

# UNITED STATES BANKRUPTCY COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re<br><br>EASTERDAY RANCHES, INC., *et al.*<br><br>Debtors[1]. | Chapter 11<br><br>Lead Case No. 21-00141-WLH<br>Jointly Administered |
| EASTERDAY RANCHES, INC. and EASTERDAY FARMS,<br><br>Plaintiffs,<br><br>v.<br><br>ESTATE OF GALE A. EASTERDAY (DECEASED), KAREN L. EASTERDAY, CODY A. EASTERDAY, and DEBBY EASTERDAY,<br><br>Defendants. | Adv. Pro No. 21-80050 (WLH)<br><br>**NOTICE AND MOTION FOR RECONSIDERATION** |

---

[1] This case is jointly administered with *In re Easterday Farms*, Case No. 21-00176-WLH11.

NOTICE AND MOTION FOR RECONSIDERATION - 1

| | |
|---|---|
| 1 | ESTATE OF GALE A. EASTERDAY (DECEASED), KAREN L. EASTERDAY, CODY A. EASTERDAY, and DEBBY EASTERDAY, |
| 2 | |
| 3 | Counterclaim Plaintiffs, |
| 4 | v. |
| 5 | EASTERDAY RANCHES, INC., EASTERDAY FARMS, |
| 6 | |
| 7 | Counterclaim Defendants. |

## MOTION

Karen Easterday, individually and as the personal representative of the estate of Gale A. Easterday ("Mrs. Easterday") moves for reconsideration of the court's scheduling order [adv. pro. doc. no. 22] (the "Scheduling Order"). Mrs. Easterday believes the court may not have fully understood or appreciated the lack of discovery to date on the issues involved in this Adversary Proceeding when ruling on the Scheduling Order. Mrs. Easterday submits that a fair trial cannot occur without a more reasonable schedule.

## INTRODUCTION

Mrs. Easterday requests that the court reconsider the discovery timeline and trial date in the above-captioned Adversary Proceeding as set out in the Scheduling Order. In stating its rationale for entering the Scheduling Order, it appears that the Court was under the misapprehension that extensive discovery had already occurred in the Adversary Proceeding. That is not correct. At the hearing on December 2, 2021, the court stated that the issues involved in the Adversary Proceeding "have already been the subject of some relatively extensive discovery" and that "we are not starting at zero here" [main case doc. no. 1293, minutes 35:26-35:30, 35:34-35:37]. The court further stated that "there are many months left to get it completed and done" [main case doc. no. 1293, minutes 35:37-35:43].

NOTICE AND MOTION FOR RECONSIDERATION - 2

Unfortunately, those statements do not reflect an accurate understanding of the facts. While extensive discovery has occurred in the main bankruptcy case as to assets owned individually by the Easterdays that were not part of the sale process, very little discovery has occurred with respect to the Sale Properties and no discovery has occurred with respect to the allocation of net proceeds of the assets that are at issue in the Adversary Proceeding. In turn, the Scheduling Order does not provide adequate time for the necessary discovery to occur and for a fair trial to take place, deprives Mrs. Easterday of her Fifth Amendment due process rights, and risks stripping her of millions of dollars of property value.

The Scheduling Order's accelerated timeline is also problematic because the outcome of the Adversary Proceeding is at the heart of Debtors' bankruptcy plan: Debtors' success in the Adversary Proceeding is the foundation upon which its proposed plan is based. As such, this process should not be unnecessarily fast-tracked.

## BACKGROUND

As the court is well aware, significant real property, along with improvements thereon and water rights appurtenant thereto, were sold (the "Sale Properties") on or about July 30, 2021 to Farmland Reserve (the "Sale"). To maximize the value of the Sale Properties, the Easterday family agreed that property personally owned by them could be sold, along with Debtors' property, with the understanding that the net sale proceeds would later be allocated among each of the Debtors and the Easterday family. This understanding was memorialized in a Cooperation Agreement prior to the Sale, which was approved by the court [main case doc. no. 640]. The Cooperation Agreement expressly recognized that the Easterday family personally owned portions of Cox Farm and River Farm, and all of Goose Gap Farm. Pursuant to the Cooperation Agreement,

NOTICE AND MOTION FOR RECONSIDERATION - 3

Debtors and the Easterday Family were to stipulate to the allocation of the net proceeds from the Sale or, to the extent there was a dispute about the allocation of the net proceeds from the Sale, negotiate in good faith and attempt to reach agreement on a timely basis on a protocol for resolving such disputes. *Id.* at sections 3 and 4.

Notwithstanding the terms of the Cooperation Agreement, the parties have not stipulated to allocation of the net proceeds and not yet negotiated in good faith to reach agreement on a protocol for resolving disputes concerning the allocation of proceeds from the Sale. Instead, on or about September 22, 2021, Debtors filed an adversary complaint against Mrs. Easterday (and other family members) seeking a determination that Debtors owned all of the Sale Properties and are entitled to all of the net sale proceeds (the "Complaint") [adv. pro. doc. no. 1]. The Complaint was shortly thereafter put on hold. On November 3, 2021, Debtors demanded an answer by the Easterdays [adv. pro. doc. no. 11]. On November 17, 2021, Mrs. Easterday filed an answer and counterclaims to the Complaint ("Answer and Counterclaims") [adv. pro. doc. no. 14], disputing Debtors' position, and counterclaimed for a full determination of all property rights and interests by, between, and among all stakeholders.

As of the date the Cooperation Agreement was approved, as of the date the Sale took place, as of the date the Complaint was filed, as of the date Mrs. Easterday's Answer and Counterclaims were filed, and as of the December 2, 2021 status conference, the parties had not undertaken significant discovery as to who owned any given parcel of the Sale Properties or the independent value of those parcels, the water rights, or the improvements. Based on the court's apparent misunderstanding that extensive discovery on these issues had already occurred, it entered the Scheduling Order.

NOTICE AND MOTION FOR RECONSIDERATION - 4

Tonkon Torp LLP
888 SW Fifth Ave., Suite 1600
Portland, OR 97204
503.221.1440

21-80050-WLH    Doc 29    Filed 12/14/21    Entered 12/14/21 16:52:41    Pg 4 of 10

# LEGAL ARGUMENT

## A. The Court Must Correct a Clear Error to Prevent Manifest Injustice

A motion for reconsideration should be granted when doing so is necessary to "correct a clear error or prevent manifest injustice." *Pyramid Lake Paiute Tribe of Indians v. Hodel*, 882 F.2d 364, 369 n.5 (9th Cir. 1989) (quoting 18 *C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure* § 4478 at 790); *see also In re River Park Square Project Bond Litigation*, No. CS0-1-0127-EFS, 2003 WL 27387027, at *1 (E.D. WA Jan. 1, 2003) ("Courts have generally recognized only four possible grounds for reconsideration: (1) evidence in the record clearly establishes a manifest error of law or fact on which the judgment was based, (2) newly discovered evidence that was previously unavailable, (3) prevention of manifest injustice, and (4) an intervening change in controlling law.")

"Clear error or manifest injustice occurs where the Court 'has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Campero USA Corp. v. ADS Foodservice, LLC*, 916 F. Supp. 2d 1284, 1292–93 (S.D. Fla. 2012) (internal quotation omitted).

While some documents related to the Sale Properties have been produced, the discovery that has been discussed repeatedly in status hearings before this court relates to the discovery of assets owned by the Easterdays other than the Sale Properties. There have been at least 16 rounds of production primarily focused on assets currently held by the Easterdays. That discovery includes Mrs. Easterday's home place, unimproved ranch land in Idaho, a small condominium in Hawaii, bank accounts, brokerage accounts, leases on non-Sale Properties, appraisals of non-Sale Properties, tax statements on non-Sale Properties, plat maps of non-Sale Properties, detailed personal property listings, documents related to Easterday

NOTICE AND MOTION FOR RECONSIDERATION - 5

Tonkon Torp LLP
888 SW Fifth Ave., Suite 1600
Portland, OR 97204
503.221.1440

21-80050-WLH    Doc 29    Filed 12/14/21    Entered 12/14/21 16:52:41    Pg 5 of 10

Farms Produce, Co. and 3E Properties Partnership, and other items unrelated to the Adversary Proceeding. These productions are ongoing and have already taken months and caused the Easterdays to incur significant time and expense in complying. However, these requests have not been focused on the Sale Properties. In fact, prior to discovery issued today, no discovery has been conducted yet by the Easterdays with respect to the Adversary Proceeding issues.

As for the Adversary Proceeding, not only will discovery as to third parties and Debtors' records need to take place, it has become apparent that Debtors hold some of the Easterdays' personal records for which the Easterdays have been searching. These are documents that should have remained in the Easterdays' possession but were seized by Debtors when they took control of the companies. The Easterdays need to regain access to their own records to prepare a proper defense. In summary, it is not accurate that extensive discovery has already been completed in the Adversary Proceeding. Rather, we are starting at zero, at least as far as the Easterdays are concerned. Such error should be corrected to avoid a manifest injustice to Mrs. Easterday.

B. <u>The Scheduling Order Violates the Due Process Clause of the United States Constitution</u>

The Fifth Amendment of the United States Constitution guarantees that an individual will not be deprived "of life, liberty, or property without due process of law." U.S. Const. amend. V. *See also Butner v. United States*, 440 U.S. 48, 55 ("Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding."); *In re Drexel Burnham Lambert Grp. Inc.*, 995 F.2d 1138, 1144 (2d Cir. 1993) ("no person may be deprived of life, liberty or property by an

NOTICE AND MOTION FOR RECONSIDERATION - 6

adjudicatory process without first being afforded notice and a full opportunity to appear and be heard, appropriate to the nature of a given case.").

The rights implicated here are fundamental protections afforded to Mrs. Easterday by the Fifth Amendment. In the Complaint, Debtors seek to have tens of millions of dollars of Mrs. Easterday's property taken away from her without any consideration in return (notwithstanding Mrs. Easterday's repeatedly offering to contribute the property to pay creditors in exchange for reasonable consideration). Debtors seek to strip from her the fruits of a lifetime of her and her late husband's work and generations of family farmers prior to them. To do that on an expedited basis would deprive Mrs. Easterday of her constitutional rights.

The deadlines set forth in the Scheduling Order are patently unreasonable given the present state of the litigation. For example, the close of written discovery is January 7, 2022, which is only 30 days after Plaintiffs' deadline to file an amended complaint or answer the counterclaim. Allowing only 30 days for written discovery in a case of this magnitude is insufficient, especially given that it comes in December, when a number of counsel and staff will be unavailable during the holidays. Having a deadline to complete all document production by February 4, 2022, and depositions by February 25, 2022, is likewise unreasonable. This dispute involves over $200 million in assets that need to have their extensive history, going back decades, reviewed and analyzed. It further requires the identification and participation of a myriad of third parties who have dealt with the Easterdays and the Sale Properties over the decades. Such information cannot be fairly obtained in the timeframe allowed by the Scheduling Order. In addition, there are not only the fact and legal issues involving the ownership of numerous parcels in dispute, but then there are the separate issues with respect to ownership of the water rights and improvements. On top of all that are the issues of valuation

NOTICE AND MOTION FOR RECONSIDERATION - 7

and apportionment of the Sale Proceeds among those various parties and property interest holders. This is not a simple dispute that can be resolved quickly.

Debtors themselves have stated how complicated this process will be at numerous prior court hearings. At the hearing on April 14, 2021, Mr. Pachulski stated that "this is about as complicated a transaction as I've seen in my career * * *. There are parcels that are owned by individuals, there are parcels that are owned by individuals and one of the debtors. One of the properties I looked at, I don't recall, your honor, if it was River Farms, had at least 77 parcels, and every one of them had a different ownership structure. So, as I stated, this is really an incredible process that we now have to go through" [main case doc. no. 580, minutes 12:11, 13:53-14:18]. As to the water rights issues, he stated "there are some really complicated water rights issues. Our firm wouldn't even touch that." *Id*. at minutes 20:05-20:10. On April 28, 2021, Mr. Pachulski pointed out that "what makes this case really complicated, Your Honor, is it's not just a matter of, you know, whether Farms gets money or whether Ranches gets money, but you have the Easterdays, who are general partners of the Easterday Farms Partnership, which creates a whole set of complex issues" [main case doc. no. 650, minutes 37:18-37:38].

Another important issue to consider with respect to timing of the Adversary Proceeding is that, at the inception of the bankruptcy proceedings, there was no dispute about the fact that the Easterdays owned certain property. The ownership dispute now in the Adversary Proceeding was only recently created by Debtors. As Mr. Pachulski stated at the March 3, 2021 hearing, "There are a lot of claims in this case, there are assets held by non-debtors, some of which have really no obligation to these estates or limited obligations" [main case doc. no. 257, minutes 45:08-45:20]. He then went on to detail the properties and identified the

NOTICE AND MOTION FOR RECONSIDERATION - 8

Tonkon Torp LLP
888 SW Fifth Ave., Suite 1600
Portland, OR 97204
503.221.1440

Easterdays as the owners of certain properties stating, "One is a property called Goose Gap. Goose Gap is, the property itself, is exclusively owned by the Easterday family * * *. The second property is called River Farms. River Farms, again, is primarily owned by the family, by members of the family * * *" [main case doc. no. 257, minutes 13:12-13:22, 14:15-14:25].

The issue of whether these are binding admissions will be left for another day in the litigation; they are only mentioned here to show that the ownership dispute has not been an issue known to all parties since the inception of the case. It is an issue that arose later in the case, and the Easterdays are entitled to sufficient time to prepare a proper analysis of the issues and a fair opportunity to present their position to the court. It should also be kept in mind that the Easterdays do not have unlimited resources and teams of professionals and advisors being paid by the bankruptcy estate with nothing to do other than litigate. Rather, the Easterdays are individuals working with limited resources and limited time while still trying to earn a living. There is no harm or prejudice to the bankruptcy estates to have the Adversary Proceeding resolved on a reasonable schedule. By contrast, there is great harm and prejudice to the Easterdays in rushing this proceeding.

The Easterdays entered into the Cooperation Agreement earlier in the case as a means to maximize value and streamline disputes by seeking resolution of them outside of time consuming and expensive litigation. Unfortunately, Debtors breached that agreement and have not engaged in any negotiations with the Easterdays over an allocation protocol. Instead, they skipped that step and seek to fast track litigation. Such conduct is a direct violation of the intent and spirit of the Cooperation Agreement. In any event, in agreeing to a process that would streamline the resolution of any disputes, the Easterdays did not agree to a fast-tracked trial that would deprive them of a fair day in court. Mrs. Easterday is

NOTICE AND MOTION FOR RECONSIDERATION - 9

entitled to the full protections of the United States Constitution to protect her rights and interests. The Scheduling Order must be revised to allow for such protections.

## CONCLUSION

The ownership and value of the Sale Properties are at the heart of this bankruptcy case, as is clear from Debtors' proposed plan and disclosure statement. There are numerous parcels of property at issue that need to be determined as to ownership among Ranches, Farms, and the Easterdays not only as to property ownership but also as to water rights and improvements. On top of that, the same parcels then need to be analyzed as to their respective real estate values and in relation to the value of water rights and improvements.

This is not a simple case and there has not been extensive discovery to date on these issues. Given the importance of these issues to Mrs. Easterday and Debtors, a determination should not be decided on an unnecessarily expedited basis and without providing the parties with the opportunity to conduct essential discovery and have a fair trial. To allow the Scheduling Order to remain in place would be manifestly unjust and deprive Mrs. Easterday of her due process rights.

For the foregoing reasons, the court should grant Mrs. Easterday's motion for reconsideration and enter a scheduling order that allows for additional time for the parties to prepare for and try this case.

Dated: December 14, 2021.

TONKON TORP LLP

By /s/ Timothy J. Conway
Timothy J. Conway, WSBA 52204
Attorneys for Karen L. Easterday, individually and as personal representative of the Estate of Gale A. Easterday

042047\02001\13046070v4

NOTICE AND MOTION FOR RECONSIDERATION - 10