ARMAND J. KORNFELD (WSBA #17214)
THOMAS A. BUFORD (WSBA #52969)
RICHARD B. KEETON (WSBA #51537)
BUSH KORNFELD LLP
601 Union Street, Suite 5000
Seattle, WA 98101
Tel.: (206) 292-2110
Facsimile: (206) 292-2104
Emails: jkornfeld@bskd.com, tbuford@bskd.com, and rkeeton@bskd.com

RICHARD M. PACHULSKI (admitted *pro hac vice*)
ALAN J. KORNFELD (admitted *pro hac vice*)
JEFFREY W. DULBERG (admitted *pro hac vice*)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067-4003
Tel: (310) 277-6910
Facsimile: (310) 201-0760
Emails: rpachulski@pszjlaw.com, jdulberg@pszjlaw.com, and mlitvak@pszjlaw.com

*Attorneys for Plaintiffs,
Debtors and Debtors in Possession*

HONORABLE WHITMAN L. HOLT

Hearing Date: December 21, 2021
Hearing Time: 2:00 p.m. Pacific Time
Location: Telephonic

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re<br>EASTERDAY RANCHES, INC., *et al.*<br>Debtors.[1] | Chapter 11<br>Lead Case No. 21-00141-WLH11<br>Jointly Administered |
| EASTERDAY RANCHES, INC. and EASTERDAY FARMS,<br>Plaintiffs,<br>v.<br>ESTATE OF GALE A. EASTERDAY (DECEASED), KAREN L. EASTERDAY, CODY A. EASTERDAY, AND DEBBY EASTERDAY,<br>Defendants. | Adv. Pro. No. 21-80050 (WLH)<br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' NOTICE AND MOTION TO DISQUALIFY PACHULSKI STANG ZIEHL & JONES LLP AND BUSH KORNFELD LLP AS COUNSEL FOR DEBTORS** |

---

[1] The Debtors along with their case numbers are as follows: Easterday Ranches, Inc. (21-00141) and Easterday Farms, a Washington general partnership (21-00176).

PLAINTIFFS' OPPOSITION TO DEFENDANTS' NOTICE AND MOTION TO DISQUALIFY PACHULSKI STANG ZIEHL & JONES LLP AND BUSH KORNFELD LLP AS COUNSEL FOR DEBTORS – Page 1

PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Flr.
Los Angeles, CA 90067-4003
Telephone (310) 277-6910
Facsimile (310) 201-0760

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

em19r10185

21-80050-WLH    Doc 33    Filed 12/21/21    Entered 12/21/21 09:55:30    Pg 1 of 10

Easteray Ranches, Inc. ("Ranches") and Easteray Farms ("Farms"), the above-captioned debtors and debtors in possession (together, the "Debtors" or "Plaintiffs"), hereby file this opposition (the "Opposition") to the *Motion to Disqualify Pachulski Stang Ziehl & Jones LLP and Bush Kornfeld LLP as Counsel for Debtors* [Adv. Pro. Docket No. 28] (the "Motion"), filed by Karen Easteray, individually and as the personal representative of the estate of Gale A. Easteray ("Defendant"), and respectfully state as follows:

## I.

## PRELIMINARY STATEMENT

Defendant does not like the truth of this case – that the Disputed Property, as defined in the Complaint, is in fact property of the Debtors' estates under prevailing property law. In lieu of a legitimate substantive challenge to the Debtors' message, Defendant has elected proverbially to kill the messenger. The Motion should be denied for the same reasons that the court denied the objection of the United States Trustee to the employment of Pachulski Stang Ziehl & Jones LLP and Bush Kornfeld LLP (together, the "Plaintiffs' Counsel") at the outset of the Chapter 11 cases – there is no actual conflict here. On the contrary, *both Debtors are collectively seeking **identical** relief* from Defendant in this adversary proceeding and neither are actively disputing title as between them. The only relief sought here vis-à-vis the Defendants is a determination that they do not in fact own the Disputed Property. Indeed, the Plaintiffs make this quite clear early in the Complaint:

> By this Complaint, the Debtors seek a judicial determination and declaratory judgment that the proceeds of the Disputed Property belong solely to the Debtors' estates. ***For the avoidance of doubt, the Debtors do not seek by this Complaint an allocation of the proceeds of the Disputed Property as between the two Debtor estates***.

Complaint, Docket No. 1, ¶ 3 (emphasis added).

Rather than recognize this, Defendant postures in the Motion as if there is an active conflict between the estates with respect to property division. The Motion spends

2

page after page building up to a suggestion that the record makes their case (see pages 2 and 3 therein) but offers nothing to actually *support* all of Defendant's ominous language. Defendant's line of argument is entirely false and there is no evidence to support it; there is no active dispute between the estates on this issue (or any other matter). The reason why they cannot offer any such evidence is because it does not exist. As has been reported to the court at recent status conferences in the chapter 11 cases, far from a dispute, the two estates are on the verge of resolving all distribution issues together as between them.

It would be the height of absurdity to allow a defendant to hypothesize a dispute between two plaintiffs in order to challenge their use of a single set of counsels in such circumstances. Even if Defendant's counterclaims are taken at face value, the question of allocation as between Farms and Ranches is only relevant if and when Defendant defeats Plaintiffs' claims initiating this litigation. In other words, if it is determined that the Disputed Property is owned by the Easterdays and there is no estate interest, the potential conflict will never ripen into a disqualifying actual conflict.

It is strikingly obvious that Defendant has no substantive argument to defeat the Debtors' claims of ownership of the Disputed Property so instead Defendant[2] has turned to a scorched earth approach of requiring the displacement of current counsel and the retention of no less than two new sets of counsel for the Plaintiffs in this proceeding (replacing both Pachulski Stang Ziehl & Jones and Bush Kornfeld).[3] Remarkably, Defendant argues that not only must Plaintiffs' counsel be replaced but also that neither of the existing counsels for the Official Creditors Committees appointed in these cases can serve in a conflict counsel capacity. Thus, Defendant demands that each Committee

---

[2] On December 17, 2021, defendants Cody and Debby Easterday filed their joinder to the Motion. It is unclear what force such a joinder has – *i.e.*, is it Cody and Debby's motion for similar relief? In any event, the Debtors oppose the Joinder as well to the extent the court considers it when ruling upon the Motion. *See* Adv. Pro. Docket No. 31].

[3] Presumably, Defendant would require that Plaintiffs retain replacement financial advisors as well but the Motion is silent on this point.

3

obtain replacement counsel irrespective of cost – despite knowing full well that the estates are not only *not* conflicted but in whole-hearted agreement about the only issue germane to this adversary proceeding: that the Easterdays are not proper owners of the Disputed Property.

## II.

## FACTUAL BACKGROUND

### A. The Filing of the Complaint, Answer and Counterclaims

On September 22, 2021, the Debtors initiated this adversary proceeding with the filing of the Complaint. The Complaint arose of out facts and information collectively uncovered by the estates showing that under prevailing law, the Disputed Property is – and likely always has been – property of the Debtors and hence is now property of these estates. Nothing in the Complaint requires a judicial determination of ownership issues as between the two Debtors. On the contrary, paragraph 3 of the Complaint makes clear that no such determination is sought in this proceeding.

On November 17, 2021, Defendant filed her answer to the complaint and counterclaims against the Debtors (the "Defendant's Answer") [Adv. Pro. Docket No. 14]. Nothing in the Defendant's Answer – at least nothing germane to the Complaint – requires a judicial determination of ownership as between the two estates. In response, on December 8, 2021, the Debtors filed their answer to the counterclaims (the "Plaintiffs' Answer"). As with the Defendant's Answer, nothing the in the Plaintiffs' Answer raises any issues of ownership as between the two estates.

Nearly three (3) months after the Complaint was filed, Defendant filed the Motion at issue – now raising for the first time the prospect of an "actual" conflict.

### B. The Motion Cites Nothing in the Factual Record to Support its Argument

The Motion spends substantial time implying and suggesting that – somehow – the court should see a dispute that simply is not there. Much is made by Defendant of the fact that Plaintiffs' counsel acknowledged that in the event of an *actual* conflict, counsels to each of the Creditors' Committees could serve in a conflict counsel-type

4

em19r10185

21-80050-WLH    Doc 33    Filed 12/21/21    Entered 12/21/21 09:55:30    Pg 4 of 10

capacity. *See* Motion, p. 2. However, later, Defendant goes on to argue that in fact neither Creditors' Committee counsel could do so because they are also hopelessly disqualified on the grounds that they are duty-bound to their respective general unsecured creditor constituencies and cannot proceed in light of the alleged "dispute."

The problem, of course, is that there is no such actual dispute in the first place. The Motion does not provide any such evidence. Neither of the Creditors' Committees has suggested any such dispute has ripened. The record is in fact replete with evidence of ongoing cooperation as between the two estates; so much so, in fact, that the Debtors have recently reported being on the brink of a comprehensive solution which the Easterday family will not endorse.

### III.
### ARGUMENT

#### A. Lack of Actual Adversity

The phrase "adverse interest" is not defined in the Bankruptcy Code, *Tevis v. Wilke, Fleury, Hoffelt, Gould & Birney, LLP (In re Tevis)*, 347 B.R. 679, 688 (9th Cir. BAP 2006), but

> "the generally accepted definition of 'adverse interest' is the (1) possession or assertion of an economic interest that would tend to lessen the value of the bankruptcy estate; or (2) possession or assertion of an economic interest that would create either an actual or potential dispute in which the estate is a rival claimant; or (3) possession of a predisposition under circumstances that create a bias against the estate."

*Dye v. Brown (In re AFI Holding, Inc.)*, 355 B.R. 139, 148–49 (9th Cir. BAP 2006). To represent an adverse interest means to serve as an attorney for a party who holds an adverse interest. *Tevis*, 347 B.R. at 688.

In determining whether a conflict exists, "[s]tate rules of professional responsibility apply, as long as they do not conflict with the Bankruptcy Code and/or

the Bankruptcy Rules." *Won Ho Song v. Ehrenberg (In re Won Ho Song)*, 2008 Bankr. LEXIS 4725, *11 (9th Cir. BAP Feb. 12, 2008).

Washington's Rules of Professional Conduct provide as follows, in pertinent part:

> (a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
>
> (1) the representation of one client will be directly adverse to another client; or
>
> (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.
>
> (b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:
>
> (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
>
> (2) the representation is not prohibited by law;
>
> (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and
>
> (4) each affected client gives informed consent, confirmed in writing (following authorization from the other client to make any required disclosures).

R.P.C. 1.7.

Notably, the R.P.C. does not prohibit the concurrent representation of clients where there is a potential conflict of interest.

The case *In re O.P.M. Leasing, Inc.*, 16 B.R. 932 (Bankr. S.D.N.Y. 1982), is directly on point. In *OPM Leasing,* the trustee and his counsel represented debtors in possession in five separate, but related, Chapter 11 reorganizations. The Chapter 7 trustee in a related case moved to disqualify both the trustee and his attorneys on the grounds of conflict of interest. The court specifically addressed two questions:

> 1. Whether the existence of an inter-company claim between a subsidiary and parent corporation as separate reorganization cases, prohibited appointment of the same trustee in both cases or constituted grounds for his removal from one of the appointments, and

> 2. Where a single trustee is presiding over related corporations in separate reorganizations with potential for recovery of property not clearly earmarked to either estate, is there a conflict that requires separate administration and disqualification of trustee's counsel from representation of either estate in litigation commenced to establish the trustee's ownership.

16 B.R., at 934–41.

Relying on *In re International Oil Co.,* 427 F.2d 186 (2d Cir.1970), the first question was answered in the negative. At least part of the rationale appears to be the feeling the gravity of the conflict did not justify saddling the estates with the expense of separate trustees and counsel. 16 B.R., at 939–40. In addressing the second question, the court noted the estates had an actual unity of interest in recovering the property in question. An actual conflict would arise only in the event the trustee was successful in recovering the property. The court felt that this conflict, should it arise, might be resolved in a number of ways, including the court structuring the adversary proceeding with case management procedures to minimize the opportunity for the premature realization of potential conflicts and/or the appointment of special counsel. *Id.* at 940–41.

em19r10185

21-80050-WLH    Doc 33    Filed 12/21/21    Entered 12/21/21 09:55:30    Pg 7 of 10

The court thus adopted a "wait and see" attitude, recognizing that acting in a pre-emptive manner could disrupt the orderly administration of the estates involved. *See also Katz v. Kilsheimer*, 327 F.2d 633, 635–36 (2d Cir. 1964); *In re General Coffee*, 39 B.R. 7, 8 (Bankr. S.D. Fla. 1984). In addition to the possible effect that disqualification would have upon the various estates, the *OPM* case also points out concern with the timing of the application for disqualification. It is clear the court considered the motion for disqualification to be, in part, a tactical device. 16 B.R. at 938–39.

*OPM Leasing* is instructive. Here, the issue on which there is a potential conflict – the inter-debtor allocation of assets between Farms and Ranches – is only potentially in play if and when the substance of Defendant's counterclaims with respect to the Disputed Property become an issue. Thus, at least until it is established that the Disputed Property is deemed to be property of the estates, there is no need to bring in replacement counsel and thereby incur additional costs and delay getting up to speed on the complex facts and legal issues – and only then if and when it ripens into an actual dispute. Moreover, if it is determined that the disputed assets are owned by the Easterdays and there is no estate interest, the potential conflict will never ripen into a disqualifying actual conflict.

**B.      Cost and the Availability of Committee Counsel**

Not only is representation of multiple-debtor cases by a single law firm common-place; it is generally the most efficient and effective way to administer cases. *See, e.g.*, *In re BH & P Inc.*, 949 F.2d 1300, 1310 (3d Cir. 1991). Thus, to conserve estate assets, courts will permit multiple-debtor representation but also evaluate the facts surrounding the representation to protect the integrity of the bankruptcy process. *In re Global Marine, Inc.*, 108 B.R. 998 (Bankr. S.D. Tex. 1987) (counsel permitted to represent debtor and its subsidiaries in consolidated chapter 11 case in which debtors functioned as one enterprise that operated for the benefit of the whole and in which there existed a unity of interest and singleness of purpose on debtors' part). Even when there are inter-company claims, as here, it is standard practice to allow multi-debtor representation

8

such that estate assets may be conserved. *See, e.g., In re Int'l Oil Co.*, 427 F.2d 186, 187 (2d Cir. 1970) (the existence of intercompany claims by itself was not a basis "to saddle these estates with the expense of separate trustees and trustees' attorneys"); *In re Guy Apple Masonry Contractor, Inc.*, 45 B.R. 160, 166 (Bankr. D. Ariz. 1984) ("For example, the existence of inter-company claims may not warrant the disqualification of trustee or counsel representing related Chapter 11 corporations."); *In re O.P.M. Leasing Serv., Inc.*, 16 B.R. 932 (Bankr. S.D.N.Y. 1982) (declining to remove trustee from stewardship of consolidated bankruptcy proceedings of debtors despite existence of an inter-debtor claim). Additionally, "[h]orrible imaginings alone cannot be allowed to carry the day. Not every conceivable conflict must result in sending counsel away to lick his wounds." *In re Stamford Color Photo*, 98 B.R. 135, 138 (Bankr. D. Conn. 1989) (internal quotation omitted).

Here, the cost of replacement counsel sought by Defendant would be overwhelming. Arguably, Defendant's approach would require not only the replacement of Plaintiffs' counsel, but replacement of their restructuring officers and financial advisors as well, not to mention the use of wholly new professionals in lieu of Committee counsel. New counsel would easily spend hundreds of thousands of dollars merely reviewing the thousands of documents, a process current Plaintiffs' counsel has already undertaken. Plaintiffs have calculated these potential expenses and *conservatively* estimate the added cost of these changes would be well over $1 million, which would be an enormous expense to address what amounts to no more than an unripened conflict. Defendant should not be granted the power to pick and choose counsel bringing claims against her nor the power to dictate what issues are germane to the Complaint. It would cause immeasurable interruption – and require substantial additional cost – to these estates were the court to abide by the Defendant's wishes.

# IV.
# CONCLUSION

For the reasons set forth herein, Plaintiffs respectfully request that the court deny the Disqualification Motion.

Dated: December 21, 2021     BUSH KORNFELD LLP

/s/ Thomas A. Buford, III
THOMAS A. BUFORD, III (WSBA #52969)
BUSH KORNFELD LLP

RICHARD M. PACHULSKI (admitted *pro hac vice*)
ALAN J. KORNFELD (admitted *pro hac vice*)
JEFFREY W. DULBERG (admitted *pro hac vice*)
PACHULSKI STANG ZIEHL & JONES LLP

*Attorneys for Plaintiffs,
Debtors and Debtors in Possession*

em19r10185
21-80050-WLH    Doc 33    Filed 12/21/21    Entered 12/21/21 09:55:30    Pg 10 of 10